Filed 10/25/23  In re N.T. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re N.T., a Person Coming Under the Juvenile Court Law. | C098041 |
| SACRAMENTO COUNTY DEPARTMENT OF CHILD, FAMILY AND ADULT SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>M.G.,<br><br>Defendant and Appellant. | (Super. Ct. No. JD241035) |

Appellant M.G. (father) is the father of minor N.T. (the minor) and appeals from the juvenile court's orders terminating parental rights and freeing the minor for adoption. (Welf. & Inst. Code, §§ 366.26, 395; undesignated statutory references are to the Welfare and Institutions Code.)  Father's sole contention is that the Sacramento County Department of Child, Family, and Adult Services (the Department) and the juvenile court

1

failed to comply with the inquiry requirements of the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.) and related California law. The Department agrees, and so do we. We conditionally affirm, subject to further ICWA compliance.

**DISCUSSION**

The minor was born in August 2020 with opiates and amphetamines in his system; he was hospitalized with withdrawal symptoms. His mother, G.T. (mother), who has developmental or cognitive delays, admitted to using drugs and tested positive for opiates at his birth. She agreed to voluntarily place the minor in foster care.

After mother and father (the minor's then-alleged father) failed to successfully engage in informal supervision services, the Department filed a section 300 petition in December 2020, alleging that the minor had suffered or was at a substantial risk of suffering serious physical harm from mother given her history of substance abuse and cognitive or developmental delays that impaired her ability to adequately protect, care, and supervise him. An attached Indian Child Inquiry form (ICWA-010(A)) stated that the Department had asked mother and father about the minor's status as an Indian child, but the Department did not check the boxes indicating whether the inquiry gave the social worker reason to believe or no reason to believe that the minor was or may be an Indian child.

According to the detention report, mother denied having any Native American ancestry in September 2020 and father did the same in December 2020. The detention report did not identify any other relatives that the Department had asked about potential Indian ancestry even though the Department had been in contact with maternal aunts L.T. and B.E., as well as maternal uncle R.T., and the report also referenced a maternal great-grandmother.

At the detention hearing in December 2020, the juvenile court detained the minor from the parents. During the hearing, mother's counsel informed the court that mother said she did not have any Native American or Alaskan Native ancestry. Mother also filed

2

a Parental Notification of Indian Status form (ICWA-020) denying that either she or the minor were members of or eligible for membership in a federally recognized Indian Tribe.  Father's counsel did not address father's heritage and father did not file an ICWA-020 form.

Based on the detention report, the juvenile court orally found ICWA did not apply because there was no reason to believe the minor was an Indian child based on current information.  The written minute order, however, provides that there was insufficient evidence before the court to determine whether the minor was an Indian child, but that having received information that the child may have Indian heritage, the court ordered the Department to notice any federally recognized tribes and the Bureau of Indian Affairs.  The written minute order also states:  "[a]s to the parents, [because] there is no evidence before the Court that [the minor] is an Indian child," "the [c]ourt finds ICWA does not apply."

The Department's jurisdiction/disposition report stated that ICWA did not apply.  A second addendum report stated that father had said he had no Native American ancestry.  According to the reports, mother and father had failed to visit or engage in services and failed to communicate with the Department.  Father was incarcerated on an extradition hold in April 2021.

At a combined jurisdiction and disposition hearing in June 2021, the juvenile court found that father was the minor's biological father and that the minor was not an Indian child.  The court sustained the petition and adopted the proposed findings and orders, adjudging the minor a dependent child and removing him from the parents' custody.  The court provided reunification services to mother but not father, who was incarcerated out of state.  Thereafter, mother did not consistently engage in services or visits.

A December 2021 permanency report stated ICWA did not apply and recommended that the juvenile court terminate mother's reunification services.  The

juvenile court instead continued mother's services and set a 12-month review hearing in July 2022.

In a July 2022 permanency review report, the Department again recommended the juvenile court terminate mother's services and select adoption as the permanent plan. The report stated ICWA did not apply. Following the permanency review hearing, the juvenile court terminated mother's reunification services, adopted the Department's proposed findings and orders, and set the matter for a section 366.26 hearing in November 2022.

In August 2022, the Department informed the juvenile court that it was "unaware of any information before the Court that would indicate [the minor] [was] an Indian Child as defined by the [ICWA]." An October 2022 Department filing listed contact information for maternal aunt L.T. and then checked a box that the minor had no Indian heritage.

The November 2022 selection and implementation report stated that the ICWA "does not apply." At the scheduled hearing on November 9, 2022, the juvenile court continued the matter but encouraged all parties to make certain that there had been an adequate inquiry into whether the minor had any Native American ancestry, or was an Indian child under ICWA, or whether additional inquiry was needed. Before concluding the hearing, the juvenile court asked maternal aunt L.T. who was present whether she knew of any Native American ancestry in her family. Maternal aunt L.T. stated that mother's family did not have any Native American ancestry or tribal affiliations, explaining that her deceased parents were of Spanish and Italian descent.

That same day, the Department interviewed mother and maternal aunt L.T. regarding possible Native American ancestry and submitted an addendum report to the juvenile court the next day describing those interviews. Mother stated that she was American, born and raised in Sacramento, that her parents (maternal grandparents) were both deceased, and that to her knowledge they were American and spoke only English.

4

She believed her mother was of "Gypsy" descent and her father was of Greek descent, although she "forgot" what countries they were from. Mother had no background information about father, but reported that he was American, spoke English, and was born and raised in Sacramento. She reported that father's parents (paternal grandparents) were both deceased and she did not have their names or background information.

Maternal aunt L.T. reported that mother was American and spoke English, that maternal grandmother's ancestors were Spanish, and that the maternal grandfather's ancestors were Romanian; both maternal grandparents were deceased. She was unsure of father's heritage.

In December 2022, the Department stated that because the parents lacked a significant bond with the minor, terminating parental rights would not be detrimental to the minor and would be in his best interest. Thereafter, father filed a section 388 petition requesting reunification services.

At a combined section 388 and section 366.26 hearing in January 2023, the juvenile court denied father's section 388 petition. The juvenile court then terminated parental rights and selected adoption as the permanent plan. Father timely appealed.

## DISCUSSION

Father contends that, although the parents and maternal aunt L.T. were asked about and denied Native American ancestry, the Department and the juvenile court failed to fully comply with the inquiry requirements of the ICWA because known maternal relatives were not asked about possible Native American ancestry and the Department made no inquiry regarding any paternal relatives. We accept the Department's concession that conditional affirmance and remand for further ICWA compliance is appropriate.

"The ICWA protects the interests of Indian children and promotes the stability and security of Indian tribes by establishing minimum standards for removal of Indian children from their families, and by permitting tribal participation in dependency

5

proceedings.  [Citations.]  A major purpose of the ICWA is to protect 'Indian children who are members of or are eligible for membership in an Indian tribe.' " (*In re A.W.* (2019) 38 Cal.App.5th 655, 662.)

The ICWA defines an " 'Indian child' " as a child who "is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe."  (25 U.S.C. § 1903 (4).)  The juvenile court and the Department have an affirmative and continuing duty, beginning at initial contact, to inquire whether a child who is subject to the proceedings is, or may be, an Indian child.  (Cal. Rules of Court, rule 5.481(a); § 224.2, subd. (a).)  The juvenile court must also ask participants in a dependency proceeding upon each party's first appearance whether the participant knows or has reason to know that the child is an Indian child *and* order the parent to complete a Parental Notification of Indian Status  (ICWA-020 form).  (*In re Austin J.* (2020) 47 Cal.App.5th 870, 883; see also 25 C.F.R. § 23.107(a) (2023); § 224.2, subd. (c); Cal. Rules of Court, rule 5.481(a).)

Due to changes in California law over the past few years, agencies now have a broader duty of inquiry and a duty of documentation (§ 224.2, subd. (b); Cal. Rules of Court, rule 5.481(a)(5)), and courts have been tasked with determining how to assess error when the agency fails to discharge its now-broad duty of inquiry.  We review claims of inadequate inquiry into a child's Native American ancestry for substantial evidence.  (*In re Rebecca R.* (2006) 143 Cal.App.4th 1426, 1430.)  Not every error by an agency in discharging its duties under section 224.2, subdivision (b), will undermine the juvenile court's ICWA finding under section 224.2, subdivision (i)(2), but the court's ability to exercise discretion in this regard is dependent on adequate record development by the department or agency.  Agencies have often conceded error and, therefore, disposition of the issue on appeal has often turned on whether the error was prejudicial.

Although reviewing courts have generally agreed that reversal is dependent on showing prejudice, or a miscarriage of justice, approaches for assessing prejudice have

6

varied.  (See, e.g., *In re E.V.* (2022) 80 Cal.App.5th 691, 698; *In re Dezi C.* (2022) 79 Cal.App.5th 769, review granted Sept. 21, 2022, S275578; *In re J.C.* (2022) 77 Cal.App.5th 70, 80; *In re A.C.* (2021) 65 Cal.App.5th 1060, 1069; *In re Benjamin M.* (2021) 70 Cal.App.5th 735, 744; *In re G.A.* (2022) 81 Cal.App.5th 355, review granted Oct. 12, 2022, S276056.)

The California Supreme Court has granted review in *In re Dezi C., supra*, 79 Cal.App.5th 769, and we anticipate further clarification on this issue.  Until such time, we accept the Department's concession that remand for further ICWA compliance is warranted.

Here, when the Department filed the section 300 petition, it reported that it had asked mother and father about the minor's status as an Indian child, but the Department did not indicate whether the inquiry gave the social worker reason to believe or no reason to believe that the minor was or may be an Indian child.  According to the detention report, both mother and father had denied Native American ancestry, but the report did not address whether the Department had inquired about possible Indian ancestry from at least four identified members of mother's extended family, including two maternal aunts, a maternal uncle, and the maternal great-grandmother.  Furthermore, the Department did not include any information regarding father's extended family even though father was present at the minor's birth and was involved in the case from an early stage.  (*In re Josiah T.* (2021) 71 Cal.App.5th 388, 406 [department or agency "has a duty 'to document it[s inquiry] and to provide clear information to the court' "].)

Mother again denied having Indian ancestry at the detention hearing, and she later filed an ICWA-020 form denying that either she or the minor were members of or eligible for membership in an Indian tribe.  But father did not address his potential Indian ancestry at the hearing and never filed an ICWA-020 form.  Based on the representations in the detention report, the juvenile court found the ICWA did not apply.

7

The jurisdiction and disposition report stated the ICWA did not apply, but it included no information regarding the Department's ICWA investigation or inquiry. While the report documented contacts with maternal aunt L.T., nothing in the record shows the Department asked her about potential Native American ancestry nor did it contact previously identified maternal extended family members, or any paternal family members, inquiring about potential Indian ancestry. The juvenile court nevertheless found that the ICWA did not apply.

The juvenile court did encourage all parties to consider whether there had been an adequate inquiry into whether the minor had any Native American ancestry or was an Indian child under the ICWA at the initial section 336.26 hearing, and the court questioned maternal aunt L.T. regarding the minor's Indian ancestry at the hearing. But the court did not inquire whether additional maternal relatives or any paternal relatives might have relevant ICWA information.

Mother and maternal aunt L.T. thereafter denied having Indian ancestry during a subsequent interview with the Department before the continued section 366.26 hearing. There is no indication in the record, however, showing the Department contacted or attempted to contact maternal aunt B.E., maternal uncle R.T., or the maternal great-grandmother to inquire about potential Indian ancestry. Nor does the record disclose efforts by the Department to identify or interview any paternal relatives.

Given the Department's concession, the record, and the remedial purpose underlying the ICWA and related California law intended to protect third party rights, we apply the analytical framework set forth by the California Supreme Court in *In re A.R.* for assessing harm, and we conclude the error is prejudicial. (*In re A.R.* (2021) 11 Cal.5th 234, 252-254.) We therefore remand the case to the juvenile court for further proceedings to address compliance with the inquiry and notice provisions of the ICWA and to enter new orders regarding the applicability of the ICWA.

8

## DISPOSITION

The orders terminating parental rights are conditionally affirmed, subject only to full compliance with the ICWA as described by this opinion.  If, on remand, the juvenile court determines the ICWA applies, the court shall vacate its previous orders terminating parental rights and conduct further proceedings consistent with the ICWA, including a new section 366.26 hearing.  (25 U.S.C. §§ 1914; 224, subd. (e).)  On remand, the parents shall have counsel reappointed and be provided due process, including notice and the right to be heard, for all ICWA compliance proceedings.


          /s/_____
MESIWALA, J.



We concur:


 /s/_____
EARL, P. J.


 /s/_____
RENNER, J.

9